Taliaeebro, J.
In November, 1863, the plaintiff filed this suit against the defendant, alleging a large amount of indebtedness by him to the plaintiff, as owner and holder of five promissory notes, secured by mortgage on a house and lot in the city of New Orleans. The plaintiff had judgment in his favor for the amount claimed, with recognition of the lien and privilege on the mortgage property described in the petition, and copies of the mortgages adduced in evidence. Judgment was rendered on the 8th of December, 1863. On the 15th July, 1865, the defendant obtained an order of appeal. He urges as irregularities in the proceedings, that having his domicile in Now Orleans, he was entitled to personal citation; that although absent at the time, that absence was only temporary, and that he was not an absentee of that hind, which, in legal contemplation, a creditor is authorized to proceed against by causing a curator ad hoc to be appointed. He further contends, that he had an agent in New Orleans, whose name appeared in the petition, and that no copy of petition or of citation was served on the agent.
The plaintiff proceeded via ordinaria. A citation was issued, and the sheriff made return, “ that after diligent search and enquiry made, Samuel McOutcheon Montgomery could not be found, and I learned that he was out of the State.’*
The plaintiff then, by supplemental petition, prayed for and obtained the appointment of a curator ad hoc to represent the defendant, and obtained against him so represented, the judgment complained against.
*351 The facts appear to be that Montgomery, the defendant, left New Orleans in 1861, or at least that he was absent in January, 1862, and there is nothing making it probable that he returned before the summer of 1865.'
He was absent with his wife in the State of Virginia, during the greater part of this time. We find no act of procuration in the record from the defendant to P. E. Bonford, who acted in the capacity of agent or attorney in fact for defendant and wife, in the execution of the second mortgage to the plaintiff in January, 1862. Bonford was a Judge of the Supreme Court of the State at or soon after that time, under the appointment of Henry W. Allen, acting as Governor under Confederate rule. The probability is, that he was absent from New Orleans after the capture of the city in April, 1862, by the Federal forces.
The act of mortgage executed by him in January, 1862, recites that Bonford was the “ agent and attorney in fact of Montgomery.” We are not authorized to infer that his powers were sufficient to enable him to defend suits, or to authorize the service of citation upon him. It is sufficiently clear, that at the time the plaintiff’s suit was filed, in 1868, Montgomery had no agent in New Orleans upon whom citation could be served, or against whom, as the representative of Montgomery, legal proceedings could have been carried on.
The only question in this case is, was Montgomery at the time this suit was instituted an absentee in legal contemplation, to whom a curator ad hoc might be appointed, and contradictorily with whom a suit might be prosecuted, and a valid judgment obtained against the absent person.
If the term absentee can only be applied to persons who never had a domicile in the State, or, who having had a domicile in the State, has left it permanently, and lives permanently beyond its limits, it is plain that such a construction of the term would operate injurious and vexatious delays to creditors seeking to enforce claims against their debtors. On the other hand, not every casual and temporary excursion of a resident from the State can convert him into an absentee, and render him liable to be harassed by his creditor, who, to gratify improper feelings, might resort to unnecessary acts to injure him. But, where in a case like the present, the debtor is absent two or three years, has property in the State, but who leaves no housekeeper or person upon whom a citation can be served, has no agent to represent him, it would be leaving him a large margin for the procrastination of payment of his debts to permit him, under such circumstances, to plead that he had a domicile in the State, and argue his right to personal citation, when, for so long a period, he was absent, and had left no person upon whom such citation 'could be served. We think such a perversion of terms inadmissible.
That the appointment of a curator ad hoc, in a case like the present, is clearly within the scope and intendment of our law, there can be no doubt. Neither is it in conflict with the spirit of our jurisprudence. The defendant refers to the case of Cole v. Lucas, 2 An. 950, on the subject of domicile. Chief Justice Eustis, in that case, said : “ A person going to another State for health, for pleasure, or any temporary purpose, with the intention to return, has a mere transitory residence which constitutes no new domicile, nor an abandonment of the old one.” The facts of this *352 case, as well as those of 16 L. 595, and those of 12 L. 603, also quoted by defendant’s counsel, as relates to the circumstances and character of the absence, differ widely from those of the one under consideration. Montgomery left New Orleans, it seems in the year 1861, during the war. It is shown that his family left here also ; that they resided in Virginia ; there is no evidence showing an intention to return. He was engaged in war; he might not survive the perils of war. The city of his former domicile was in possession of the United States military forces. He might not desire to return. Taking the whole range of circumstances attending his absence, we think the case very different from that of a person absent a short time for health, pleasure or some temporary purpose, with the known intention to return.
If the defendant had a-domicile in and resided in the State, he had no right to an appeal, for the time had elapsed within which he was entitled to appeal.
How he could be an absentee to entitle him to two years to take an appeal, and at the same time claim to be personally cited, seems to present some incongruity.
The case of Mr. Livingston, 6 N. S. 15, referred to by plaintiff’s counsel, shows that the appointment of a curator ad hoc might be made to represent a person absent temporarily on public business, when he had' left no agent upon whom process could be served.
In 12 L. page 604, it was laid down that “previous to the promulgation of the Louisiana Code and the Code of Practice, the appointment of a curator ad hoc to an absentee was not authorized by law. But our present Codes seem to have provided for all cases in which absent persons may be interested, or in which rights are to be exercised against them, whether domiciliated in or out of the State. ” This seems to have been the practice heretofore generally adopted.
The ease of Dupuy v. Hunt, in 2d Annual, made no innovation upon this practice. It simply settled that the absentee must have property in 'the State upon which the action of the Courts could fake effect, and that judgments rendered against absentees had no effect beyond the property proceeded against.
It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs in both courts. 14 L. 447. 15 L. 81. 2 An. 634. 6 Rob. 189. 13 An. 505. 18 An. 145.